I beg your pardon for butting in. Is that a place in addition to a company? Not that I know of, Your Honor. I was just going to say I butted in because I've grown up in Hawaii, but it's not a place that I recognize. I've never heard of it before, but I thought there's a lot of places in Hawaii. My wife grew up there, and she didn't know. We're not taking up your time. You have 20 minutes, and you may proceed. Thank you very much, Your Honor. Howard McPherson for Appellant Christopher McDonald. We've been given 20 minutes. My colleague, Mr. Hilsman, and I would like to divide our time evenly for my portion and then his portion. Ten minutes on rebuttal, with court permission. It is an admiralty case involving a workplace injury. I have just a few things I'd like to cover with my time here, if I may. First, a brief refresher on the most pertinent facts that are undisputed, a clarification of the precise relief that we're requesting in this court, and then three points along the way to that requested relief involving the current decision and its progeny, its legacy, if you will. This Court's treatment of the Pennsylvania rule, specifically with respect to the Mathis decision and its predecessors, and, of course, the Alaska Supreme Court's recent decision, and then finally the issue of the conceivable connection going to the application of the Pennsylvania rule in this case that the Mathis Court spoke of. The facts. We have a Jones Act seaman, Coast Guard, a vessel rather subject to inspection and certification by the United States Coast Guard, regular scuba operations aboard and from that vessel in the course of its operations, making the Coast Guard and OSHA driving regulations applicable to the vessel's operation or maybe more precisely to the employer, to this employer. As to scuba drivers. That's correct, Your Honor. I think it's helpful to note, though, in the Kobzinski case, this Court's decision, the discussion about the applicability of OSHA regulations or non-applicability, actually, was phrased in terms of applicability to the operation of the vessel. I think that's an important concept that helps us to bridge this gap between whether these particular regulations should be separated from any injury or workplace incident during the vessel's operation. The more correct rule we would contend is that once the regulations are made applicable to the employer, the employer's operation of a vessel, there's no proper way to separate it completely and ignore them. As the Kernan decision in our reading, and I believe many others. Is there anything in the scuba diving regulation that deals with free divers, the safety of free divers? In effect, very much so, Your Honor, but not in the literal sense. I think we would be forced to concede. I'm talking about the literal sense. No. Nothing in the text of the regulation that deals with free divers and the safety thereof. I think if what Your Honor is asking, whether those regulations are made applicable to free diving operations, absolutely not. I mean, I think it's clear. Well, all right. Does it deal with, for example, does it discuss putting pressure on the nose and blowing gently into it if you're a scuba diver? I don't think the regulations are quite that specific, although they are very specific. They require practices manuals, designated persons in charge, from which all flow the institution of safe practices. And in this particular work environment, equalization of yours is a critical thing and a very easily injury-producing thing. So the difficulty, and I'm sure you know exactly what it is because you've spent a lot of time with the case. The rule that was violated relates to scuba diving, but you're supposed to have an operations manual that has safety and health of the divers, including safety procedures and checklists for each diving mode used. So one can imagine that it might say that you should not go below such and such a level without appropriate scuba gear, they would say to the divers. Or if you are at such and such a level, you should follow such and such a procedure. So although that might relate to scuba divers, by kind of exclusion it relates to free divers, meaning if you need to have gear to go below this level, then you shouldn't be doing it without gear. So in that regard, one can see where these regulations indirectly would affect free divers who are on the boat. But the other argument that's made is, well, these are only for scuba divers. So what I'm having trouble with is some guidance of knowing whether your client is within the intended class of beneficiaries of the regulation. The operations manual regulation, the one that was violated. I think, again, Your Honor, if we're talking in a textual sense, the answer is no. And that, we contend, was the error of this Court in focusing upon the class of persons for whom the regulation was intended to benefit. That is, of course, the common law doctrine that's come up from the Fifth Circuit and found its way into the Ninth Circuit case law under Section 53. But I think, Your Honor, you hit it directly on the head when you said one can conceive how these regulations would have an effect indirectly. I think that's a very, very, very important concept and perhaps dispositive of the appeal in many senses, because if you examine the case law, for example, the Horton case, the claimed violation was that the operator of the tug that pulled this barge away from a dock in the wee hours of the morning up in Anchorage did not have the proper tonnage endorsement on his captain's license, that the vessel was 123 tons. His license said he was only licensed to operate a vessel of 100 tons. And the Alaska Supreme Court said that that was enough to trigger the Pennsylvania rule's applicability. There was a conceivable causal connection between that violation and the injury. And I think that the Kernan doctrine is much the same, especially if you look at the facts of the Kernan case itself. You have a navigational light that was too low to the water that ignites fumes off the river in Pennsylvania, not even fumes from the deck of the barge on which this poor sailor lost his life, but fumes from perhaps spilled oil or petroleum product in the river. A navigational light in those days, an open flame, it seems amazing to think of. But the navigational light, the violation of a navigational rule, it wasn't for fire prevention. It wasn't really even for crew safety directly. But indirectly, that second conceptual step wherein the Court says we're simply not going to turn a blind eye to this violation of rules, that's not in our policy. And under the FELA and the Jones Act, the courts have consistently for decades now, this Court, the United States Supreme Court, all of the circuits have read the to provide a recovery for workplace injury where it can, where it justifiably and properly can. In the Kernan case, the Horton case, there is that indirect half step conceptually linking the violation of the regulations, statutory rule, actually in all of these cases, Coast Guard regulations, the easiest case. Coast Guard has jurisdiction over vessels. And we've jumped over a lot. I must say. Ginsburg. It seems to me, even if you're right, and I have made no judgment on this yet, but even if you're right that this regulation might extend coverage to everybody who's working on a boat that does commercial dive operations. By effect, Your Honor. By effect. But wouldn't you still need additional findings that there was the causation? In other words, that has, that certainly isn't present. And at a minimum, it would need to go back to see if there is any causation. I was just going to jump to clarifying the relief request, Your Honor, since we've passed over so much already. The question of causation, I think, has been determined on this record by operation of the presumption in the Pennsylvania rule unrebutted. If the Pennsylvania rule applies, this Court, reading this record, and fortunately it's a small record, relatively small record, can find that there's not a sufficient level of proof to rule out any possibility that these regulations. Are you saying that we can apply the Pennsylvania rule even if the Kernan rule is not satisfied? And I'm referring to the proximate causation requirement of Kernan. In Kernan, there was a violation of the regulation about the lamps, the height of the lamps. And there's no question in that case that the fire was a result of that which proximately caused the injury to the seaman in that case. There's no dispute. And as much as I would like to say yes, Your Honor, in all good faith, I think in this particular case I would have to say no because the district court below passed on the questions of fault with respect to the unseaworthiness doctrine and the question of general or common law negligence under the Jones Act, Jones Act negligence we call it in the trade. The question of statutory fault per se liability remains. So, again, as much as I would like to say no that the Pennsylvania rule could apply independently here, I think I'm constrained to answer or sorry, the reverse. As much as I would like to say yes, I think I'm constrained to say no because. So both elements of Kernan must be shown in this record. Well, the one element, the violation of a Coast Guard regulation is under dispute and has been shown. Yes. The question of causation has never been reached. The record has to contain a showing of evidence of causation or at least what this Court has termed a conceivable connection wherein the Pennsylvania rule then operates shifting the burden to the vessel owner in violation of the safety statute. And it's there, Your Honor, that I think on this record causation can be found as a matter of law simply by the nonrebuttal of the presumption. Do you want to, you've gone a little over your ten minutes. Do you want to save for your colleague? I do. I don't want to cut into his time. Thank you very much, Your Honor. May it please the Court. Richard Wooten for the appellees. Our position is this. The facts that were decided by the trial court establish why both the Pennsylvania rule and the negligence per se rule do not apply here. The argument that was made by the appellant for application of both those doctrines was that free diving is an inherently unsafe activity and that a scuba dive manual as required by the Federal regulations governing commercial diving, which are clearly inapplicable on their terms to free diving, had there been in place a commercial diving manual that it would have precluded dives below a certain depth. That was a testimony of one expert. And additionally, the argument was made that if there was a scuba dive manual or surface-applied air dive manual, that maybe that would permeate the safety culture of the company and as a result that would somehow result in free diving not occurring at least below 20 feet. In fact, what the court found was that, A, free diving is an easily learned skill. B, it is not inherently risky. These are the findings of the court. C, that the appellant was an experienced trained free diver before the appellee even hired him and he worked thereafter on another 120 trips making multiple dives to 20 feet and significantly below, and that in fact, during the course of the company's operations, there had been between 40,000 and 100,000 such free dives made without any incident of injury. The appellant's... The only thing that stops me in all this is just one statement that you made, the testimony that if there had been a dive manual, it would have said not to do free diving or to use appropriate equipment below a certain level. And it seems to me that's the only thread to even talk about here. It's not all these other things so much as does that mean that having an operations manual per the regulation sort of encompassed indirectly anyone who would, you know, want to go below that level? So we're clear, what the regulations talk about is there needs to be an operations manual and sets out some guidelines they don't talk about... Very vague. ...in any way, shape or form. The expert in this case for the plaintiffs testified that had there been a dive operations manual, it would have provided that you don't free dive below 20 feet because in his opinion, that would be unsafe. What the court found based on the testimony of our expert, who is the free diver, much more experienced in free diving. In fact, plaintiff's expert indicated he knew nothing really about it except that inherently he thought it was unsafe. The testimony that we presented was from the U.S. National Free Diving Team, which I didn't even know existed until I met him. Is that an Olympic sport? It is not yet an Olympic sport. But it's pretty interesting the way they do it. You'll see the movie The Deep Blue. In any event, he testified about free diving activities, what goes into it, and how it can be learned, and the fact that it's safe. What the court did was accepted without question what our expert testified to. But even if it's not inherently unsafe, that doesn't mean that there aren't limits to the That's correct. But she said it is a safe, easily learned skill. There's nothing inherently unsafe about it. It can be practiced in a safe manner. And that's based on her findings. What I am suggesting is that if you look at all the cases that talk about either the application of the Pennsylvania rule, which I think has nothing to do with our case here, or the Kernan negligence per se rule, whether it's under Section 51 or 53, or the common law, which is a very tangled issue, as you've seen in the briefing, the courts have said you need to take a look at whether not there the test is not whether there is some connection or a possible connection. The test, according to the Wills case, is whether there is a logical, reasonable connection between the alleged or between the violation and the injury that follows. And I think that's part of what has caused all the straining in connection with these cases as it arises or as it pertains to both the Pennsylvania rule and the Kernan negligence per se rule. If the testimony is that it's not inherently unsafe, but that if you had a dive manual, it would tell you a level below which you shouldn't go without appropriate diving gear, why isn't that a logical, reasonable connection to the violation? What I'm saying is that was the testimony of their expert. The Court rejected it. The Court, if you look at its findings, said this is a safe, easily learned skill. It's another two different things. I understand. The evidence before the Court was additionally that there had been regularly dives to this depth and deeper, and this dive was a 47-foot dive. Right. And so the Court clearly adopted the point of view that making a dive like this was not unsafe. And the fact that so what we would submit is the rejection of the plaintiff's expert, therefore, necessarily. Then you need to have no evidence on that point, then. Well, we say it rejects the logical, natural causal connection between the activity which was performed and the reasons why you would apply negligence per se, leaving them really only with the argument that had there been a dive safety manual for scuba divers or compressed air divers, that that somehow would have made the operation more safe. And the evidence just doesn't support that in any way, shape or form. As it relates to the Pennsylvania rule, I would submit that if you look at the cases, it is to my mind very clear that given the fact that the Pennsylvania rule arose out of collision cases, if you look at what the courts have said and the commentators have said, Gilmour and Black in particular, the reason for the presumption that is applied in collision cases is that where you have a violation of navigation rules, a collision is a very natural, logical result. Therefore, when a collision occurs and there is such a violation, it should be the burden of proof on the vessel owner to show that there is not that connection because of that logical flow. But the cases have also said, if you look through them carefully, whether it's the attempt to apply the Pennsylvania rule in a benzene exposure case that resulted in cancer, the court said, the Third Circuit said, again, it has to logically and naturally lead to the accident. And in that case, they said that's not necessarily the case, and so the burden shifting should not apply. The other thing they've said in the Pennsylvania rule is that usually in collision cases or navigational error cases, the party that controls the evidence that is going to determine whether or not they violated a regulation or acted negligently is, in fact, the vessel owner. And therefore, it is reasonable to put the burden on the vessel owner to come forward with that evidence in order to rebut what is that natural and logical conclusion. That's not the case in the normal Jones Act case. And I think you see that. We cited Wills, the benzene exposure case. Wilkins, which was a heart attack case due to overwork. The Pirro case, another collapse due to overwork. And in fact, the Mathis case, the Ninth Circuit, what the Court said there was that in certain cases they implied that in certain cases, Jones Act cases, application of the Pennsylvania rule would be acceptable. But in that particular case, they refused to give the instruction on either negligence per se or the Pennsylvania rule because there was no such logical, rational connection between the fact that a captain lacked a Coast Guard endorsement, which a co-worker had aboard, and the fact that the plaintiff later caught his foot between two vessels during an unloading process. They said that's just not close enough. And that's what we're submitting as the case and ours as well. The cases in which the Jones Act cases in which the Pennsylvania rule was not acceptable and the Pennsylvania rule have been applied tend to be man overboard, people lost cases because in those, as you've seen, that is the highest that the courts have indicated that it is a fundamental rule of maritime safety that the vessel owner must exercise the highest degree of diligence in attempting to rescue one of its seamen that's gone overboard. And that makes sense as well. Again, as it relates to the negligence per se standards, there is no question that the law is tangled. And there is no question but that the Kernan Court was addressing a Section 51 negligence per se issue in which they adopted the two criterion, was there a violation and was there cause and fact or proximate cause. Are we bound by Kernan rather than the language in plus Zeck or however you pronounce that? I think not. And the reason is this. We're not bound by Kernan? Well, I think you can do whatever you want. I took an oath. The fact of the matter is the lower courts have strayed from what Kernan said. There's no question about that. However, what you do the same thing. Well, what Kernan did say is that in the body of the text that they were going to leave it to the lower courts to develop the extent of this principle. And I think whether it's been done rightly or wrongly is certainly up to this Court to decide. Well, do you think that you have met the Kernan test? Oh, absolutely. And the reason is. Tell us how. And the reason is under Kernan, if you simply apply the two-court, there's two-criterion standard. Our point of view is, again, if you look at the underlying facts that were decided by the court, she says, yes, there's a violation of the commercial dive regulations. However, given the fact that freediving is not governed by those regulations, given the fact that freediving is safe, given the fact the plaintiff was experienced, given the fact that there had been thousands and thousands of such dives, including hundreds by this individual in particular, that there just was no reason to apply that regulation. And I think based on causation in the underlying record and her finding on the underlying record, that's accurate. And, in fact, if you look at the cases, this is where it's very interesting. If you look at the cases that we've cited, be it Moody, Wills, Wilkins, Pirro, others, what the appellate courts have done is really make their own determination whether the alleged violation, as, again, logically and naturally leads to the conclusion that this accident occurred or would occur. And I submit to Your Honors that the Court in this case has ruled it out very clearly. That's all I have. Thank you. Roberts. Thank you, Judge McKeon, for preserving some of my time. Let me just start by saying that if freediving were an Olympic sport, the only place it would be practiced would be in the lawless Hawaiian town of Kakaupapa. I want to respond to a couple of questions that the Court posed very quickly, and beginning with Judge Ellicott's concern about whether or not scuba diving is covered by the regulations. We're not here to argue about the facts. Mr. Wooten bases his entire argument on the notion that the Court made certain findings. There's only one factual issue that this appeal turns on, and that is whether, as Judge McKeon put it, there's a causal thread between the violation and the accident. All of the other remarks that Mr. Wooten made about fact findings are utterly irrelevant, and this Court made no factual finding about that causal thread because it didn't reach the issue. Now, the thing that I want to emphasize is that the Kernan rule of per se liability and the Pennsylvania rule are essentially the same rule intertwined, and this Court recognized that in the Mathis case when it said that the only relevant difference between the two theories is that the Pennsylvania rule shifts the burden of proof on causation to defendant, while the Kernan rule still requires some proof of causation. But they are both basically fraternal twins, if you will. Now, there is no requirement in the Kernan rule that the statute apply to the class in which the plaintiff is a member. There is absolutely no requirement under the Kernan rule that the scuba diving regulations, which I'll refer to the commercial diving regulations in shorthand as the scuba diving regulations, apply to freedivers. And if the Court has any question about that, I would urge you to read the dissent in Kernan, Judge Harlan's dissent, where he synthesized the rule, I thought, more clearly than the majority. And according to that dissent, the Court has decided that any violation of any statute in and of itself holds the shipowner liable for all injuries flowing from it. So the only question, then, under both Kernan and Pennsylvania is whether there is a causal thread, a conceivable causal thread, under which a rational trier of fact could conclude that the violation in this case, linking the violation in this case to the accident. Another point I want to clarify is that Mr. Wooten kept referring to the Kernan rule of negligence per se. Negligence has nothing to do with the Kernan rule. The Kernan rule is a rule of non-negligence per se liability. Again, a point which Judge Harlan made. All you have to show in Kernan is that there was a violation of any statute. So now, this clause of the Pennsylvania Penitentiary Act. And that that violation proximately caused the injury. That there was a causal link, Your Honor. In the Jones Act, there need not be a proximate cause. All we have to show is that there was some causal link, however slight. And the Pennsylvania rule modifies that to the extent that we have to show that there is a conceivable causal nexus between the two. So I think when all is said and done, this appeal boils down to the question of whether we can demonstrate to the Court that under these facts, there was a conceivable causal link, a thread, between the violation and the injury. Now, we begin with the understanding, with the realization that the scuba diving regs were designed to prevent hyperbaric injuries. Well, that's exactly what Mr. McDonald suffered, is a hyperbaric injury. Mr. Wooten, I believe, distracted the Court by suggesting that free diving is somehow easily learned and safe. Consider this, Your Honor. This courtroom is about 23 feet tall. The free dive we're talking about was twice this distance. This man was asked to jump off of a vessel parked 47 feet above our heads, swim to the bottom, retrieve a line and return to the surface with one breath of air. It doesn't matter at all in this regulatory analysis if the scuba diving guy said, hey, I'll go do that because I've got scuba gear, and he said, your client says, no problem, I've done this before, I'm going. No, ma'am. It may matter to the downstream issue compared to the negligence, but it does not matter to the per se violation. We have a current violation here. The question is whether that violation had a causal link. Now, again, I think the key to the causal link is, one, understanding the realities of what this man was being asked to do, and, two, recognizing that the regs themselves were designed to prevent hyperbaric injuries. This injury occurs from a too rapid descent. The reason this man had to make too rapid a descent is because he had to get down to the bottom quickly. The manual, and indeed most manuals, in fact all manuals with which I'm familiar, stipulate descent rates for dives of this distance. Well, you can't live up to those descent rates on one breath of air. You have to use scuba gear to make a 46-foot dive to stay consistent with those descent rates. And the whole reason for those descent rates is to prevent inner ear injuries of the exact type that happened here. If there had been a manual, if there had been a dive supervisor, if they had followed the scuba diving regulations, this dive would have never occurred. That's the threat. What's more, Your Honor, if this Court were to conclude that we don't have a causal link in this case, the way that employers like Cajicolo could avoid the scuba diving regulations would be to fire scuba divers and expect their employees to make 46-foot free dives as a matter of routine, which indeed Cajicolo did. What that does, Your Honor, is it shifts the technology of this industry back to the 19th century, which is a complete reverse of the momentum of the Jones Act and the FLA. The Jones Act and the FLA and the Coast Guard scuba diving regs were all passed to protect seamen in a dangerous trade. If this Court concludes that the Pennsylvania rule and the Kernan rule do not apply to this case, it will expose seamen like Chris McDonald to 19th century practices like free diving at 46 feet and deprive them of the very regulatory and statutory protections that the Jones Act, the Coast Guard, and the FLA were designed to protect them with. And that, I think, is the heart of the case. The case that you can point us to that is in this posture where the rule covers X, but by implication it would cover a category of people that's not X? Yes, ma'am. It's the Supreme Court case of Davis v. Wolf, which was discussed at length in the Kernan case. In Davis, a conductor on a train was injured because a grab rail failed while he was holding it. And he relied on the Safety Appliances Act. Well, the Safety Appliances Act and the regulations passed under it were not designed to protect conductors on moving trains. They were designed to protect yard workers coupling and uncoupling trains. And the Davis court held and the Kernan court recognized and Justice Harlan emphasized that the class of employee who was protected in Davis was not the plaintiff, nonetheless. The court held that there was an FLA section 51 violation in Davis, and the Supreme Court adopted that rule in Kernan as opposed to the Jones Act. But in the Davis case, wasn't the violation of the regulation clearly the proximate cause of the injury? It was, Your Honor. And one of the things that surprises me about all these cases, with the exception of Mathis, is that these doctrines are intertwined and you rarely find a case which discusses all of them. And this indeed is that case. Mathis is the one that comes the closest, which basically says that the two rules are essentially the same. The only difference is that in Kernan you have to prove causation and in Pennsylvania causation is presumed. What we need, I believe, this Court to do and what the district court didn't do is to make the leap and recognize that the Pennsylvania rule assists a plaintiff, a seaman plaintiff like Mr. McDonald, by presuming causation in the absence of the strong evidence to the contrary. And another point, the last point I'd make is that Mr. Wooten is suggesting that there is grounds for assuming that Kernan, I beg your pardon, that Pennsylvania doesn't apply to Jones Act cases. That's nonsense. This Court has held in Mathis and indeed in citations that are apparent from the Mathis case that the Jones Act does incorporate Pennsylvania. Indeed, the Alaska State Supreme Court in Horton relied on Mathis for that very proposition. That's a ship that has already sailed. That's not an issue here. The issue here is whether these facts will permit a rational finder of fact to conclude because the magistrate who heard this case never reached the issue that there was a causal link between the violation, which is undisputed, and the very hyperbaric injury that Mr. McDonald suffered. Thank you. Thank you. Thank both counsels. Very helpful arguments. The case of McDonald v. Kazakolu is submitted. We're going to take a short break. Counsel for Reno Air Racing v. McCord can come and get set up. All rise. This Court stands to be satisfied. Thank you. Thank you.
judges: Alarcon, McKeown, Holland